## David Kaskey & Company v. Mackey, Mayor, et al.

David S. Malis, for plaintiff; James Francis Ryan, for defendants.

FERGUSON, P. J., June 9, 1930.—

### Summary of pleadings.

The bill in brief complains that plaintiff is an auctioneer engaged in business in Philadelphia, and is the holder of a license for the term of one

year from March 8, 1929, issued to him by the Commonwealth of Pennsylvania, upon the payment of a license fee of $500; that the Police Department of the City of Philadelphia has interfered with his business and threatened to have him arrested, if he persists in his occupation as an auctioneer, because he has failed to take out a license and to pay a license fee to the City of Philadelphia, as required by an ordinance passed June 3, 1926. An injunction is prayed for. The answer admits the essential facts and contends that the ordinance of council is a valid and enforceable enactment.

### Findings of fact.

1. The plaintiff, David Kaskey, is a resident of the City of Philadelphia, engaged in the business of an auctioneer and has been engaged in such business for upwards of twenty years.

2. Plaintiff is the holder of a license to conduct the business of an auctioneer in the City of Philadelphia for the term of one year from March 8, 1929, for which he paid to the Commonwealth of Pennsylvania the sum of $500. He is likewise the holder of a similar license issued for the term of one year from March 8, 1930, for which he paid a license fee of $500 to the Commonwealth of Pennsylvania.

3. Efforts were made by police officers in the service of the City of Philadelphia to interfere with the conduct of plaintiff's business, because he failed to take out a license under an ordinance passed June 3, 1926, requiring the payment of a license fee of $250.

4. As a consequence, and by arrangement with the city solicitor, it was agreed that the license fee claimed by the City of Philadelphia should be paid without prejudice to the plaintiff's rights.

### Discussion.

By the Act of April 9, 1859, P. L. 435, the legislature deals with the subject of auctioneers. Among other things, it provides for the amount which shall be paid for the privilege of conducting that business; fixes the method of determining license taxes and fees; requires the taking of an oath and the making of returns to the State Treasurer; provides penalties for violation of the act, and generally regulates the manner and method of carrying on the business.

By the Act of June 26, 1873, P. L. (1874) 332, it is provided that auctioneers shall be rated with merchandise brokers, and, in lieu of all commissions theretofore directed to be paid by them, they are required to pay in the same manner as brokers a license tax similar to that paid by brokers, and no other. It also provides that no auctioneer's license shall be issued for the City of Philadelphia for less than $500. The Act of 1873 is amended by the Act of May 5, 1921, P. L. 406. The amendment, so far as relates to the matter in controversy here, makes no change in the Act of 1873. It merely adds a proviso with reference to the requirements of a license tax for an auctioneer selling livestock or farm implements.

There is nothing in either the Act of 1873 or the Act of 1921 which indicates in the slightest degree an intention to amend or repeal the provisions of the Act of April 9, 1859. The only thing affected by the later acts is the amount which shall be paid as a license fee. We have, therefore, in the Act of 1859 a complete system regulating the licensing of auctioneers and the manner in which they shall conduct their business. The Council of the City of Philadelphia, on June 3, 1926, passed an ordinance which regulates the sale of merchandise at public auction, and provides for the licensing and bonding

of persons making such sales. It calls for an application under oath, accompanied by affidavits of citizens certifying to the good character of the applicant, and granting to the director of public safety authority to require further evidence on the subject of character. It forbids untruthful statements or representations, the use of cappers and fraudulent or imitation bidders, the giving of premiums as incentives to bidders, and provides for the payment of a license fee of $250 per annum, with a surety bond in the sum of $15,000. It also provides for a penalty for violation of any of the provisions of the ordinance.

It was explained by the superintendent of police that the ordinance was passed because the police department had found that certain irresponsible and itinerant merchants would at times open places of business and conduct auction sales, and often employed cappers to mingle in the crowd to decoy the public, and other devices were used for the purpose of attracting people, and false bidders would be used at times so that goods would be sold which were not genuine and the public thereby victimized.

If we were called upon to comment upon this explanation for the passage of an ordinance, we would be obliged to say that simply because unlicensed people conduct auctions in the City of Philadelphia, with or without unlawful devices, is no reason why regularly licensed auctioneers who have paid their fees to the Commonwealth of Pennsylvania and who conduct their business in a lawful manner should be required to pay an additional license fee. It is not our function, however, to deal with the reasons which impelled the passage of an ordinance by City Council. It is sufficient to say that where the legislature passes an act of assembly providing for the payment of a license tax and also regulates the manner and conduct of that business, and provides in express words that the license tax paid to the Commonwealth shall be the only tax paid, it is beyond the power of the municipal authorities to pass any legislation dealing with the subject. We have examined the authorities which have been submitted by counsel in the case. It is true that a regulation of the municipality, in the exercise of its police power, not inconsistent with the regulation prescribed by the state, may be valid, but when the legislature enacts that an auctioneer shall pay a license tax of $500, and no other, there is no doubt that an ordinance imposing an additional tax is inconsistent with the statute. The Commonwealth authorizes a man to engage in a certain business in the City of Philadelphia after he pays a certain license fee. The municipality says, in effect, that he shall not do so unless he pays an additional license fee. There does not seem to be much room for argument. "A statute will override a conflicting municipal ordinance, other things being equal, whether it precedes or follows it in point of time. Ordinances which assume directly or indirectly to permit acts or occupations which the state prohibits, or to prohibit acts permitted by the state, are uniformly declared to be null and void. Municipal regulations must not conflict with state laws licensing occupations or businesses. A business or occupation licensed by the state may be regulated within reasonable limits, if the regulation does not impair the right under the state license, but it cannot entirely prohibit such licensed business or occupation:" 43 Corpus Juris, 217.

### Conclusions of law.

1. The City of Philadelphia was without power to enact the Ordinance of June 3, 1926.

2. The defendants, Harry A. Mackey, Mayor; Lemuel B. Schofield, Director of Public Safety, and William B. Mills, Superintendent of Police, should be

enjoined from interfering with or molesting plaintiff in the carrying on of his business as an auctioneer.

3. The license fee of $250 exacted of plaintiff, which was paid by him under protest and without prejudice to his rights, should be returned to him by the police authorities.

4. The defendants should pay the costs.

## Decree nisi.

And now, to wit, June 9, 1930, it is ordered and decreed that the defendants, Harry A. Mackey, Mayor; Lemuel B. Schofield, Director of Public Safety, and William B. Mills, Superintendent of Police, and each of them, and their agents are enjoined from interfering with and preventing the plaintiff from carrying on his lawful business as an auctioneer, and that the $250 deposited by plaintiff be returned to him by the police authorities, and that defendants pay the costs.

The prothonotary will notify the parties or their counsel of the filing of the above adjudication, and that unless exceptions thereto be filed within ten days, the above decree nisi shall be taken as and for the final decree in the cause.